```
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF FLORIDA

                                   CASE NO. 08-22193-CIV-MORENO
                                   MAGISTRATE JUDGE P.A. WHITE

WILTON BROWN,                  :

     Plaintiff,                :

v.                             :
                                        REPORT OF
THOMAS TRUJILLO, ET AL.,       :     MAGISTRATE JUDGE

     Defendants.               :
```

I. Introduction

The plaintiff Wilton Brown, currently incarcerated at the Sumter Correctional Institution, filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983 for damages and other relief.[1] (DE# 1). The plaintiff named the following defendants: Miami-Dade Police Department (MDPD) Detectives Thomas Trujillo, Roberto Soler, Hiram Suarez, Wayne Tillman, Steven Wathen, and DEA Agent Andrea Beasley.[2] (DE# 1).

Brown alleged in his complaint (DE# 1) that on March 21, 2005, Brown exited his sister's apartment and walked towards the elevators when Trujillo approached and, without identifying himself, asked if he could speak with Brown. Brown refused, at which point, Soler came up and grabbed Brown, who broke free of Soler's grip and ran away. He eventually took refuge in an apartment owned by Benjamin Green. After hiding in Green's apartment for thirty minutes, Brown obtained Green's permission to

---

[1] In the Amended Preliminary Report, the Undersigned explained, "Brown filed this civil action on a standard form for 42 U.S.C. §1983 complaints. Jurisdiction for this case cannot be based entirely on 42 U.S.C. §1983, as that statute provides a mechanism to raise constitutional claims against state, not federal, actors. One of the defendants in this case is a federal actor. The Complaint against the federal actor is a classic civil action brought pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), as the plaintiff raises claims of constitutional violations against the individual federal actor. . . ." (DE# 17, p. 1).

[2] Beasley is sometimes referred to by her married name, Andrea Grasso.

take a shower. While Brown was showering, Green knocked on the door to say police had arrived and wanted to speak with Brown. As Brown exited the shower, Wathen released his police dog (K-9 "Cody"), while Trujillo, Soler, Suarez, Tillman, and Beasley yelled at Brown and allowed the dog to attack him for nearly ten minutes, causing severe bite wounds. Brown was arrested and charged with resisting arrest and battery on a police officer based on his initial interaction with Soler and Trujillo and for burglary of an occupied dwelling for entering Green's apartment. He was taken to the hospital, where he remained for several weeks. These charges were dismissed on April 2, 2007. (DE# 1).

The complaint alleged that by allowing a police dog to attack him and failing to intervene to stop the attack, the officers violated Brown's Fourth Amendment rights to be free from excessive force[3] (claim 1) and violated state assault and battery law (claim 3). Brown further alleged that the officers violated his Fourth Amendment rights by engaging in an illegal search and seizure (claim 2), falsely arresting and imprisoning him (claim 4), and engaging in malicious prosecution (claim 6). (DE# 1). A Preliminary Report recommended that the foregoing claims proceed against defendants Wathen, Trujillo, Soler, Suarez, Tillman, and Beasley, in their individual capacity. (DE# 17, p. 8-9). The District Court adopted the Report in a subsequent order. (DE# 21).

DEA Agent Beasley filed a motion to dismiss or, in the alternative, motion for summary judgment (DE# 47). Beasley asserts three arguments. **(1)** Claims 3, 4, and 6 are essentially common law claims sounding in tort, therefore, the claims should be construed as arising under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, et seq. Exhaustion of administrative remedies constitutes a jurisdictional prerequisite to the filing of an action under the FTCA. Because Brown did not exhaust his administrative remedies, this Court lacks jurisdiction to consider these claims. **(2)** Summary judgment in her favor on claims 1 and 2 is appropriate because she was not present during the K-9 attack or the subsequent arrest.

---

[3] The Preliminary Report noted, "Although the Complaint alleges a violation of the Eighth Amendment, the Complaint is liberally construed to raise a claim under the Fourth Amendment." (DE# 17, p. 5-6).

She swore to her absence in a declaration attached to the motion. (DE# 47-4). **(3)** Beasley is entitled to qualified immunity for claims 1 and 2 because she was not present and did not participate in the alleged constitutional violation. (DE# 47).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987), an order of instruction was entered, informing Brown as a pro se litigant of his right to respond to Beasley's motion for summary judgment. (DE# 50). Brown filed a response and exhibits in support thereof. (DE# 66). Brown's exhibits include a declaration executed by Brown on July 30, 2009 and photographs of his injuries. (DE# 66). Beasley subsequently filed a reply in support of her motion for summary judgment (DE# 72-73) and a supplemental filing to her motion for summary judgment (DE# 82). Attached to the latter is a motion for post-conviction relief filed by Brown in state court following his conviction for trafficking cocaine and possession of drug paraphernalia.[4] (DE# 82-1). Beasley notes that Brown discussed (under oath) the events on the night in question in his post-conviction motion and did not mention Agent Beasley. (DE# 82). After this Court issued a supplemental order instructing Brown concerning his right to respond to the supplemental filing (DE# 83), Brown filed a response and supporting exhibits[5] (DE# 87).

MDPD officers Wathen, Trujillo, Soler, Suarez, and Tillman filed a joint motion for summary judgment (DE# 75) and various supporting exhibits[6] (DE# 75, 76, 77). They argue that **(1)** Wathen is entitled

---

[4] In addition to the three charges later dropped, Brown was charged with these two crimes as a result of his March 21, 2005 arrest.

[5] The exhibits include excerpts of deposition testimony provided by Brown (p. 6-11), Trujillo, Tillman, Suarez (p. 16-29), Sheila Green (p. 33-39), and Wathen (p. 40-41); Officer Suarez's March 22, 2005 affidavit for a search warrant (p. 12-13); a portion of the MDPD investigative report regarding the March 21, 2005 incident (p. 14-15); the docket sheet in Brown's criminal case for resisting a police officer, battery on a police officer, and burglary of an occupied dwelling, which reflects the case was closed on April 2, 2007 (p. 30-32); and photographs (p. 42-44). Brown did not attach a complete copy of his April 29, 2009 deposition, however, a transcript of his deposition is contained elsewhere in the record (DE# 56-4).

[6] The officers attached Wathen's and Trujillo's answers to interrogatories (DE# 75-1, 75-2); an arrest affidavit executed by Soler which recounts his version of events on March 21, 2005 (DE# 75-3); a copy of the information filed against Brown for resisting Soler with violence contrary to Fla. Stat. §843.01

to qualified immunity on the excessive force claim because his use of a police dog was objectively reasonable, **(2)** Trujillo, Soler, Suarez, and Tillman are entitled to qualified immunity on the failure to intervene claim because they did not observe the K-9 attack, **(3)** all the officers are entitled to qualified immunity on the false arrest and malicious prosecution claims because there existed probable cause to arrest Brown, and **(4)** all the officers have statutory immunity on the state law claims. (DE# 75, p. 2). The officers joined with Beasley in the supplemental filing to defendants' motions for summary judgment (DE# 82), wherein they noted that the facts Brown provided under oath in his post-conviction motion supported the officers' version of events. This Court issued an order of instruction pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987) with respect to the motion for summary judgment (DE# 81) and the supplemental filing (DE# 83). Brown responded to both filings in a single response. (DE# 87). The MDPD officers filed a reply in support of their motion for summary judgment. (DE# 88).

## II. Analysis

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."

In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish

---

(DE# 75-4); an arrest affidavit executed by Suarez (DE# 75-5); a judgment against Brown reflecting his plea of guilty to cocaine trafficking under Fla. Stat. §893.135(1)(b)-(c) and possession of drug paraphernalia with intent to use under Fla. Stat. § 893.147(1) (DE# 75-6); and deposition transcripts of Trujillo (DE# 76-1), Soler (DE# 76-2), Suarez (DE# 76-3), Tillman (DE# 76-4), Wathen (DE# 76-5), and Sheila Green (DE# 77).

>        the existence of an element essential to that party's case,
>        and on which that party will bear the burden of proof at
>        trial. In such a situation, there can be 'no genuine issue as
>        to any material fact,' since a complete failure of proof
>        concerning an essential element of the non-moving party's case
>        necessarily renders all other facts immaterial. The moving
>        party is 'entitled to judgment as a matter of law' because the
>        non-moving party has failed to make a sufficient showing on an
>        essential element of her case with respect to which she has
>        the burden of proof. (citations omitted)

Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing

Anderson, 477 U.S. 242).

### B. Excessive Use of Force by K-9 Officer Wathen[7]

The Supreme Court and the Eleventh Circuit have recognized that lawful arrests often involve force and injury. Graham v. Connor, 490 U.S. 386, 396 (1989)("the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); Rodriquez v. Farrell, 280 F.3d 1341, 1351 (11 Cir. 2002) ("the typical arrest involves some force and injury").  However, a claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its "reasonableness" standard.  Graham, 490 U.S. 386; Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11 Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1197 (11 Cir. 2002). Such an analysis requires a court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the government interest alleged to justify the intrusion." Graham, 490 U.S. at 396 (quoting United States v. Place, 462 U.S. 696 (1983)). The factors to consider when balancing an arrestee's constitutional rights and the need for use of force include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Id.  See also Vinyard, 311 F.3d at 1347; Lee, 284 F.3d at 1197.  In determining whether the force applied was "reasonable" under the circumstances, the Court must examine: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied. Graham, 490 U.S. at 396; Vinyard, 311 F.3d at 1347; Lee, 284 F.3d 1998. Although the test applied by the Eleventh

---

[7] In his complaint, Brown asserts an excessive use of force claim against all the defendants, however, Brown accuses only Wathen of applying excessive K-9 force and accuses the other officers of failing to intervene.

Circuit previously included a subjective prong, examining whether the force was applies maliciously, see, e.g., Leslie v. Ingraham, 786 F.2d 1533, 1536 (11 Cir. 1986), that factor was eliminated from the analysis by Graham and other cases establishing that the excessive force inquiry should be completely objective, thereby excluding consideration of the officer's intentions. Lee, 284 F.3d at 1198 n.7. Thus, "reasonableness" for purposes of such an analysis is judged according to an objective standard under the totality of the circumstances, without regard to the officers' underlying intent. Graham, 490 U.S. at 389.

The practice of police departments authorizing officers to use trained police dogs to find, seize and hold suspects, by biting if necessary, has been upheld by the courts. See Kerr v. City of West Palm Beach, 875 F.2d 1546 (11 Cir. 1989); Chew v. Gates, 744 F. Supp. 952 (C.D. Cal. 1990). Whether a particular use of force is a sufficient intrusion, so as to violate a suspect's Fourth Amendment rights is subject to analysis under Graham, 490 U.S. 386. See Pace v. City of Palmetto, 489 F. Supp. 2d 1325, 1331-32 (M.D. Fla. 2007).

Wathen and Brown dispute whether Wathen's use of the police dog was reasonable under Graham, 490 U.S. 386. Wathen provided his version of events during his August 23, 2005 deposition (DE# 76-5) and in his March 31, 2009 answers to Brown's interrogatories (DE# 75-1). Brown testified to his version of the facts during his April 29, 2009 deposition (DE# 56-4) and in a July 30, 2009 declaration (DE# 66, Exh. A).

According to Wathen, he was called to the scene because a suspect had battered a police officer and fled on foot. (DE# 76-5, p. 4; 75-1, p. 3). When Wathen arrived, the officers present had established a perimeter and were searching for the suspect. The Greens exited their apartment and informed Wathen that a stranger matching the suspect's description had entered their apartment through the balcony window and barricaded himself in the bathroom without permission. (DE# 76-5, p. 5; 75-1, p. 3). During her deposition, Sheila Green corroborated Wathen's testimony when she testified that she told the officers that she did not known Brown or give him permission to be in her apartment. (DE# 77). The

7

Greens gave Wathen permission to enter and remove the suspect. (DE# 76-5, p. 6; 75-1, p. 3). Wathen knocked on the front door and gave the K-9 warnings twice in English, Spanish, and Creole. (DE# 76-5, p. 6; 75-1, p. 3). After waiting fifteen seconds without a response, Wathen entered the apartment and released Cody, who immediately alerted outside the bathroom door. Wathen knocked on this door and repeated the K-9 warnings, but again received no response. (DE# 76-5, p. 7; 75-1, p. 3). Wathen forced the door open and saw Brown in the shower. Wathen ordered Brown to raise both hands, Brown raised only one hand so Wathen released the dog due to his fear that Brown was holding a weapon in his concealed hand. Wathen pulled back the shower curtain and observed that Brown was naked and not armed. Accordingly, Wathen immediately pulled Cody off Brown. (DE# 76-5, p. 8; 75-1, p. 3). Wathen took Brown out of the bathroom and turned him over to the other officers, who took Brown into custody. (DE# 76-5, p. 8-9; 75-1, p. 3).

According to Brown, after he exited his sister's apartment on the fourth floor, a man approached and asked to speak with him. (DE# 56-4, p. 48-49; DE# 66, Exh. A, ¶1). The man was not dressed as a police officer, did not have a badge, and did not identify himself as police. (DE# 56-4, p. 48-49; DE# 66, Exh. A, ¶2). Brown said, "I don't know you" and kept walking, at which point he observed a second man, not dressed like an officer or carrying a badge, leap up from a crouching position and advance. (DE# 56-4, p. 48-49; DE# 66, Exh. A, ¶1-2). Brown broke into a run and jumped over the railing. (DE# 56-4, p. 51; DE# 66, Exh. A, ¶2). He landed on the second floor and seriously injured his hand, which started bleeding profusely. (DE# 56-4, p. 51; DE# 66, Exh. A, ¶2). He managed to climb onto the balcony of Ben Green's apartment. (DE# 56-4, p. 51-52; DE# 66, Exh. A, ¶3). Ben, who Brown had known for about a year, was in the apartment and agreed to allow Brown to enter after Brown explained he was being chased by several men. (DE# 56-4, p. 51-52; DE# 66, Exh. A, ¶3). Because Brown's hand was bleeding, Ben told Brown that he could clean himself up and take a shower. (DE# 56-4, p.52 ; DE# 66, Exh. A, ¶3). A little while later, Ben knocked on the bathroom door and said the police were outside and Brown

8

told Ben to let them in. (DE# 56-4, p. 54-55; DE# 66, Exh. A, ¶5-6). Moments later, Brown heard a dog barking and several officers, including K-9 officer Wathen, yelling, "Hurry up and get out!" (DE# 56-4, p. 55; DE# 66, Exh. A, ¶7). Brown was stepping out of the shower when the police dog attacked by clamping down on his leg, causing him to fall back into the tub. (DE# 56-4, p. 59; DE# 66, Exh. A, ¶8). In response to Brown's screams of pain, Wathen yelled, "Shut the fuck up!" (DE# 66, Exh. A, ¶8). When the officers yelled at Brown to exit the bathroom, Brown dragged himself through the door, with the dog still attached to his leg, and promptly passed out from the pain. (DE# 56-4, p. 59-60; DE# 66, Exh. A, ¶8). When Brown regained consciousness, the dog was still bitting his leg and Wathen finally commanded the dog to release. (DE# 56-4, p. 60; DE# 66, Exh. A, ¶9). Officers handcuffed Brown and wrapped his naked body in a plastic sheet. (DE# 66, Exh. A, ¶10). Fire rescue examined his injuries at the scene. (DE# 66, Exh. A, ¶10). He was then transported to the police station to be booked, afterwards, he was taken to Jackson Memorial Hospital. (DE# 66, Exh. A, ¶20).

Balancing Brown's Fourth Amendment rights with the police officers' need to intrude upon those rights by using force to apprehend him, it is clear, when considering the factors enunciated by the Supreme Court in Graham v. Connor, that some force was necessary in Brown's case. The record shows that Wathen believed that Brown had committed battery on a law enforcement officer and burglary of an occupied dwelling. Brown does not dispute Wathen's belief and instead testified that he did not push any officers and that he had Ben Green's permission to be inside his apartment. Wathen and Brown both testified that Brown fled from the men who approached him on the fourth floor by leaping over the railing. Wathen also testified that he believed Brown posed a threat not only when he fled from officers and entered the Greens' apartment without permission through the balcony door, but also when Wathen confronted Brown in the bathroom and Brown concealed one of his hands.

The record reflects that when Wathen released the K-9, Wathen reasonably believed that Brown had committed multiple felonies,

9

fled from officers to avoid arrest, and posed a threat to the safety of the officers and the Greens. See Graham, 490 U.S. at 396. Brown has failed to make a sufficient showing of an essential element, namely, that Wathen's use of a trained police officer was unreasonable under these circumstances. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ("The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). Accordingly, Wathen is entitled to summary judgment in his favor as to the claim that Brown's Fourth Amendment rights were violated through the use of excessive K-9 force on arrest. In light of the foregoing conclusion on the merits, it is not necessary to determine whether Wathen is entitled to qualified immunity.

### C. Failure to Intervene by Beasley, Trujillo, Soler, Suarez, and Tillman

Since the use of K-9 force by Officer Wathen was necessary and reasonable under the circumstances, there was no need for Beasley, Trujillo, Soler, Suarez, and Tillman to intervene to prevent Wathen's use of K-9 force. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11 Cir. 1985) (claims of excessive force are cognizable under §1983, as are claims of nonfeasance by an officer present at the scene who fails to take steps to protect a victim from a fellow officer's use of excessive force). Summary judgment in favor of the defendants on the failure to intervene claim is also appropriate.

### D. False Arrest /Imprisonment

Although a warrantless arrest without probable cause violates a person's constitutionally protected liberty interest, and forms the basis for a section 1983 claim, Marx v. Gumbinner, 950 F.2d 1503, 1505-06 (11 Cir. 1990); Motes v. Meyers, 810 F.2d 1055 (11 Cir. 1987), the Constitution does not guarantee that only the guilty will be arrested, Baker v. McCollan, 443 U.S. l37 (l979), and the existence of probable cause is an absolute bar to a section 1983

10

action for false arrest. Marx, 950 F.2d at 1506. Moreover, the fact that an arrested individual is ultimately acquitted, or charges against him are dropped, is of no consequence in determining the validity of the arrest. Id. at 1507; Mills v. Town of Davie, 48 F. Supp. 2d 1378, 1380 (S.D. Fla. 1999). Probable cause "requires more than mere suspicion, but does not require convincing proof." Bailey v. Board of County Commiss'rs of Alachua County, 956 F.2d 1112, 1120 (11 Cir. 1992). See also Rankin v. Evans, 133 F.3d 1425, 1435 (11 Cir. 1998) (quoting State v. Scott, 641 So.2d 517, 519 (Fla. 3 Dist. 1994) ("The facts necessary to establish probable cause need not reach the standard of conclusiveness and probability as to the facts necessary to support a conviction")).

The definition of probable cause is well established, see, e.g., United States v. Elsoffer, 671 F.2d 775 (11 Cir. 1982), and it has been long recognized that probable cause to arrest exists where the facts and circumstances within an arresting officer's knowledge, and of which he had reasonably trustworthy information, are sufficient for a man of reasonable caution to believe that an offense has been or is being committed. Hunter v. Bryant, 502 U.S. 224, 229 (1991); Draper v. United States, 358 U.S. 307, 311 (1959); United States v. Herzburn, 723 F.2d 773, 775 (11 Cir. 1984); United States v. Kye Soo Lee, 962 F.2d 430, 435 (5 Cir. 1992). The validity of an arrest is not vitiated, and an arresting officer is not stripped of entitlement to qualified immunity on a claim of false arrest so long as there was probable cause to arrest for some offense. See Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11 Cir. 2002) (validity of an arrest does not turn on whether the offense for which there was probable cause was announced to the individual at the time of his/her arrest, nor does it turn on whether the offense was cited in the officer's arrest report); Stachel v. City of Cape Canaveral, 51 F.Supp.2d 1326, 1331 (M.D. Fla. 1999) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead we focus on the validity of the arrest. If there is probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails") (quoting Wells v. Bonner, 45 F.3d 90, 95 (5 Cir.

1995)).

Moreover, the existence of circumstances in which an arresting officer has only *arguable* probable cause, if not actual probable cause, is sufficient for a defendant officer to be entitled to qualified immunity. See Lee v. Ferraro, 284 F.3d 1188, 1195 (11 Cir.2002); Scarborough v. Myles, 245 F.3d 1299, 1302 (11 Cir.2001). Arguable probable cause exists where reasonable officers in the same circumstances, and possessing the same knowledge as the defendant officer(s) could have believed that probable cause existed to arrest. Scarborough, 245 F.3d at 1302. In making the determination whether arguable probable cause exists, the Court must apply an objective standard, asking whether the officer's actions are reasonable, regardless of the officer's underlying intent or motivation. Vaughn v. Cox, 264 F.3d 1027, 1036 (11 Cir. 2001); Montoute v. Carr, 114 F.3d 181, 184 (11 Cir. 1997). Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, because to do so would negate the concept of probable cause and transform officers into prosecutors. Scarborough, 245 F.3d at 1302-03.

Brown argues that Beasley, Wathen, Trujillo, Soler, Suarez, and Tillman lacked probable cause to arrest him for burglary, resisting arrest with violence, and battery on a law enforcement officer. The defendants[8] counter that probable cause, or at least arguable probable cause, existed to arrest Brown for one or more of the following:  battery on a police officer, resisting arrest, burglary, and/or trespass.

Battery occurs when a person "1. Actually and intentionally touches or strikes another person against the will of the other; or

---

[8] Beasley argues in her motion for summary judgment that Brown's claims for false arrest, malicious prosecution, and assault/battery should be treated as tort claims arising under the FTCA.  Brown's claims do not fall within the purview of the FTCA. As amended, the FTCA provides individual federal employees with immunity from personal tort liability. Whenever federal employees are alleged to have committed common law torts within the scope of their employment, the remedy under the FTCA is against the United States. See Federal Employee Liability Reform & Tort Compensation Act of 1988, 1988 Amendment to 28 U.S.C. §2679; H.Rep. 100-700, 100th Cong.2d Sess. 2, U.S. Code Cong. & Admin. News 1988, p. 5945; see also: Newmand v. Soballe, 871 F.2d 969 (11 Cir. 1989).  In this case, Brown has not named the United States as a defendant, nor has he invoked the Court's jurisdiction under FTCA.

2. Intentionally causes bodily harm to another person." Fla. Stat. §784.03(1)(a). "Whenever any person is charged with knowingly committing an assault or battery upon a law enforcement officer . . . the offense for which the person is charged shall be reclassified . . . (b) In the case of battery, from a misdemeanor of the first degree to a felony of the third degree." Fla. Stat. §784.07(2).

According to Brown's deposition testimony and declaration, he did not come in contact with any of the men who approached him and he could not have pushed anyone because he was 30 to 45 feet away from them.[9] (DE# 56-4, p. 50). Furthermore, Brown had no knowledge of their status as a law enforcement officers as the men were plain-clothed, not wearing badges, and did not verbally identify themselves as police. (DE# 56-4, p. 48-49; DE# 66, Exh. A, ¶1-2).

Officers Soler (DE# 76-2, p. 10-11), Trujillo (DE# 76-1, p. 10), and Tillman (DE# 76-4, p. 5) provided similar testimony during their respective depositions. Namely, that they approached Brown near the elevators, they were plain-clothed, their badges were visible, they verbally identified themselves as police, and asked to speak with Brown. Brown responded by pushing Soler aside and running to the rail, which he jumped over. Soler executed an arrest affidavit on March 22, 2005, which listed a charge for battery on a police officer under Fla. Stat. §784.07, wherein he stated that he approached Brown and identified himself as a police officer, Brown pushed him and fled on foot. (DE# 75-3). Suarez testified that he wore his badge on his chain, but was too far back to observe Brown make contact with Soler. (DE# 76-3, p. 10-12). In his March 22, 2005 affidavit for a search warrant, Suarez asserted, "Upon identifying ourselves a police officers . . . Brown then fled on foot." (DE# 87, p. 12). The defendants note that the facts contained in the post-conviction motion filed by Brown in state court support their version of events. This sworn document provides: "Brown said, 'I don't know you,' ran by Soler pushing him out of the way to jump over the rail." (DE# 82-2, p. 6).

---

[9] This testimony is inconsistent with the facts contained in his complaint wherein Brown alleged, "Soler then leaped from his hiding space, charged plaintiff, and grabbed plaintiff." (DE# 1, p. 5).

It is clear from the foregoing that there is conflicting testimony regarding whether the officers possessed probable cause to arrest Brown for battery on a law enforcement officer. However, even if, *assuming arguendo*, Brown did not push Soler and the officers did not identify themselves as police, this does not suffice to show that there was no probable cause whatsoever for plaintiff's March 21, 2005 arrest. The validity of an arrest is not vitiated so long as there was probable cause to arrest for *some* offense. See Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11 Cir. 2002). Here, Soler's arrest affidavit also listed a charge for burglary of an occupied dwelling under Fla. Stat. §810.02.

For offenses committed in Florida after July 1, 2001, burglary is defined as "entering a dwelling, a structure, or a conveyance with intent to commit an offense therein . . . ." Fla. Stat. §810.02(1)(b)1. "Burglary is a felony of the second degree . . . if in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a: (a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains." Fla. Stat. §810.02(3)(a). For purposes of section 810.02, dwelling is defined as "a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." Fla. Stat. §810.011(2).

Brown testified that he asked for, and obtained, Ben Green's permission to enter the apartment, and Ben had known Brown for about a year. (DE# 56-4, p. 51-52; DE# 66, Exh. A, ¶3). Sheila Green testified that she told the police that she did not know Brown and did not give him permission to be in the apartment. (DE# 77-1, p. 6-8). She let Wathen enter to search for Brown with the police dog. (DE# 77-1, p. 6-8). Consistent with Ms. Green's testimony, Officers Trujillo (DE# 76-1, p. 11-12), Soler (DE# 76-2, p. 14-15), Suarez (DE# 76-3, p. 13-14), Tillman (DE# 76-4, p. 6-7), and Wathen (DE# 76-5, p. 6), each testified that the Greens informed police that a man they did not know had entered their

14

apartment through the balcony and was barricaded in the bathroom and gave police permission to remove the man.

Here, it is clear that the MDPD officers had probable cause, or at a minimum arguable probable cause, to arrest based on the information provided by the occupants of the apartment Brown had entered through the balcony. Brown has not produced evidence establishing that under these circumstances, there was reason for the police to not find the Greens to be credible complaining witnesses. Even if there later came to light other information that might call into question whether further investigation could or should have been made before arresting Brown, what matters for purposes of these summary judgment proceedings is that the MDPD officers, on March 21, 2005, were presented with information which would have led a reasonable officer to conclude that Brown had committed burglary of an occupied dwelling.

"The existence of probable cause is an absolute bar to a section 1983 action for false arrest," Ortega v. Christian, 85 F.3d 1521, 1525 (11 Cir. 1996). The defendants have met the initial burden of establishing that probable cause existed and Brown has not come forward with evidence sufficient to rebut the defendant's showing. Accordingly, summary judgment in favor of all defendants on the false arrest/imprisonment claim is appropriate.[10] See Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992).

### E.   Illegal Search and Seizure

When the police arrested Brown on March 21, 2005 for battery on a law enforcement officer and burglary of an occupied dwelling, the officers conducted a search incident to arrest and took Brown into custody. Brown argues that because the officers lacked probable cause to make the arrest, the subsequent search and seizure violated his constitutional rights. Having concluded above that probable cause existed to arrest Brown for burglary, the officers

---

[10] Summary judgment against Brown is also appropriate because the defendants are protected by qualified immunity as the arrest was supported by arguable probable cause. See Lee v. Ferraro, 284 F.3d 1188, 1195 (11 Cir.2002).

15

did not run afoul of the constitution based on the post-arrest search and seizure. Accordingly, summary judgment against Brown is appropriate on his illegal search and seizure claim.

### F. Malicious Prosecution

The Courts have held that when evidence shows that where arresting officers after conducting a continuing investigation have turned over all relevant information to state attorney, and the evidence further shows that the arresting officers neither made the decision whether or not to prosecute the suspect, nor acted in such a way as to improperly influence the decision of the State Attorney in that regard, then the arresting officers are not proper targets of a claim of malicious prosecution. See Eubanks v. Gerwen, 40 F.3d 1157, 1160-61 (11 Cir. 1994). Allegations of malicious prosecution, however, including allegations that a police officer knowingly made false statements to obtain an arrest warrant, can constitute a violation of the Fourth Amendment. The Eleventh Circuit noted in Whiting v. Traylor, 85 F.3d 581, 584 (11 Cir. 1996), "[L]abeling . . . a section 1983 claim as one for a 'malicious prosecution' can be a shorthand way of describing a kind of legitimate section 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow as the prosecution goes ahead." Cf. U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1290 (11 Cir. 2001). The Whiting Court also noted that "we think referring to a federal 'right' to be free from malicious prosecution is actually a description of the right to be free from an unlawful seizure which is part of a prosecution." Whiting, 85 F.3d at 584 n.4.

To establish a §1983 claim for malicious prosecution, a plaintiff must prove: both a violation of a right to be free from unreasonable seizures, and the elements of a common law tort of malicious prosecution. Wood v. Kesler, 323 F.3d 872, 881 (11 Cir.2003). To establish a §1983 claim for malicious prosecution, the plaintiff must prove both the elements required under state law for a common law tort of malicious prosecution, and violation of his Fourth

16

Amendment right to be free from unreasonable seizures. <u>Kingsland v. City of Miami</u>, 382, F.3d 1220, 1234 (11 Cir. 2004); <u>Wood v. Kesler</u>, 323 F.3d 872, 881 (11th Cir.), cert. denied, 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003) (citing <u>Uboh v. Reno,</u> 141 F.3d 1000, 1002-04 (11th Cir.1998); <u>Whiting v. Traylor</u>, 85 F.3d 581, 584-86 (11th Cir.1996); and <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1553-55 (11th Cir. 1994)). As for the elements of a tort under Florida law, the plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) institution of an original judicial proceeding against the plaintiff; (2) the defendant was the legal cause of the original proceeding; (3) termination of the proceeding in favor of the accused/plaintiff; (4) absence of probable cause for the proceeding; (5) malice on the part of the defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. <u>See</u>  <u>Kingsland v. City of Miami</u>, 382, F.3d 1220, 1234 (11 Cir. 2004) (citing <u>Durkin v. Davis</u>, 814 So.2d 1246, 1248 (Fla. 2 Dist. 2002)).

In this case, Brown cannot prevail on his malicious prosecution claim because, as discussed supra, it is clear from the record that there was probable cause for Brown's arrest, and therefore required fourth element is not satisfied.  In order to establish the third element, the formerly accused must establish that there was a "favorable termination" indicative of the innocence of the accused, and this he has not done. As the Eleventh Circuit noted in <u>Uboh v. Reno</u>, 141 F.3d 1000, 1004 (11 Cir. 1998), the Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994), observed that the requirement of favorable termination in the context of malicious prosecution suits prevents parallel litigation over issues of probable cause and guilty and the possible creation of conflicting resolutions arising out of the same or identical transactions. In addition, Courts have reasoned that "only terminations that indicate that the accused is innocent ought to be considered favorable." <u>Uboh</u>,141 F.3d at 1004 (quoting <u>Hilfirty v. Shipman</u>, 91 F.3d 573, 580 (3 Cir. 1996) (relying on Restatement (Second) of Torts §660 cmt. A ("Proceedings are 'terminated in favor of the accused'...only when their final disposition is to indicate the innocence of the accused.")).  As the <u>Uboh</u> Court noted, other

courts have found that for the favorable termination requirement to be satisfied, requires a showing that the disposition of the charge was indicative of innocence. Id. at 1004 (citing Taylor v. Gregg, 36 F.3d 453, 456 (5 Cir. 1994), and Singleton v. City of New York, 632 F.2d 185, 193 (2 Cir. 1980)). The Court in Uboh, concluded, therefore, that "courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination and, thus, cannot support a claim for malicious prosecution." Id.

To establish the third element, Brown provided a copy of the docket sheet which lists charges for resisting an officer with violence, burglary of an occupied dwelling, and battery of a police officer and provides that the first charge was nolle prossed and that no action was taken with respect to the other charges. This evidence falls short of establishing that Brown was innocent of all three crimes. See Uboh, 141 F.3d 1000. Furthermore, Green testified during her deposition that she and her son decided not to testify because they were threatened by Brown's friends and family. (DE# 77-1). Similarly, Soler testified that the burglary victims did not want to prosecute. (DE# 76-2, p. 12).

Because Brown has failed to make a showing sufficient to establish multiple elements essential to a malicious prosecution claim, summary judgment in favor of all defendants on this claim is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### G. Pendent State Law Claims of Assault and Battery

A federal court has the power to resolve a pendent state issue only if the court already has jurisdiction over the parties. In other words, the parties must either be diverse or there must be a substantial federal claim asserted against the defendant. Williams v. Bennett, 689 F.2d 1370, 1379-80 (11 Cir. 1982), cert. denied, 464 U.S. 932 (1983). Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Generally, if all federal claims are eliminated before trial, the pendent state claims should be dismissed. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). When all federal claims are resolved, it is neither unfair

nor inconvenient to the parties to require the plaintiff to pursue his state law claims in state court. Fiscus v. City of Roswell, 832 F. Supp. 1558, 1564-65 (N.D. Ga. 1993)(court declined to retain supplemental jurisdiction over state law claims of intentional infliction of emotional distress, false imprisonment and false arrest after summary judgment awarded for defendants on federal claims of Fourth, Eighth and Fourteenth Amendment violations). See also Brown v. Masonry Products, Inc., 874 F.2d 1476 (11 Cir. 1989), cert. denied, 493 U.S. 1087 (1990)(when summary judgment properly granted for defendants on all federal claims, the district court was well within its discretion in dismissing the state claims because of lack of pendent jurisdiction).

In light of the above recommendations that summary judgment be granted in favor of defendants Trujillo, Soler, Suarez, Tillman, Wathen, and Beasley on all federal claims in the case, the pendent state claims against all defendants should be dismissed, without prejudice to pursue any viable state tort claim which he might have in the Courts of Florida.

### III.  Conclusion

It is therefore recommended as follows:

1.  The motion for summary judgment filed by defendants Trujillo, Soler, Suarez, Tillman, and Wathen (DE# 75) be GRANTED as to all claims.

2.  The motion for summary judgment filed by defendant Beasley (DE# 47) be GRANTED as to all claims.

3.  The pendent state claims against all defendants be dismissed without prejudice.

4.  The case be closed.

5.  All other pending motions not otherwise ruled upon by separate order be dismissed as moot.

Objections to this report may be filed with the District Judge

within fourteen days of receipt of a copy of the report.

It is so recommended at Miami, Florida, this 8th Day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE


cc:

Wilton Brown
No. 090075061
Sumter Correctional Institution
9544 CR 476B
Bushnell, FL 33513

Christopher Allan Green
Miami City Attorney's Office
Miami Riverside Center
444 SW 2nd Avenue, Suite 945
Miami, FL 33130-1910

Ronald Jay Cohen
Cohen & Rind, P.A.
8100 Oak Lane, Suite 403
Miami Lakes, FL 33016

Amanda A. Kessler
United States Attorney's Office
99 NE 4 Street
Miami, FL 33132